UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LORETTA B. MORTISE

        Plaintiff,

      v.                      **REPORT AND RECOMMENDATION**
                                      **08-CV-990 (LEK)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

    Plaintiff Loretta Mortise brings this action pursuant to the Social Security Act ("the

Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security ("Commissioner"), denying her application for Disability

Insurance Benefits ("DIB").[1]

## II.    Background

    Plaintiff applied for DIB on October 8, 2003, alleging an onset date of March 12,

2002 (R. at 30).[2] Plaintiff alleges disability due to a back impairment and depression.

Her application was denied initially on April 8, 2004 (R. at 48-50). Plaintiff filed a request

for a hearing on May 19, 2004 (R. at 52).

    On March 7, 2005, Plaintiff appeared before ALJ Kelly (R. at 34). The ALJ

considered the case *de novo* and, on August 10, 2005, issued a decision finding Plaintiff

not disabled (R. at 34-40). Plaintiff filed a subsequent application for DIB on September

8, 2005, also alleging March 12, 2002, as the onset (R. at 109-111). On February 17,

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman
A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated December 12, 2009.
[2] Citations to the underlying administrative record are designated as "R."

2006, the Appeals Council remanded to the ALJ (R. at 44-47). By order of the Appeals

Council, Plaintiff's two DIB applications were consolidated (R. at 16, 46).

Plaintiff appeared before ALJ Gale on October 16, 2007 (R. at 641-85). On

November 29, 2007, the ALJ issued a decision finding Plaintiff not disabled (R. at 16-

29). The ALJ's decision became the Commissioner's final decision when the Appeals

Council denied Plaintiff's request for review on July 23, 2008 (R. at 6-8). On November

17, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the

Northern District of New York on September 12, 2003, this Court will proceed as if both

parties had accompanied their briefs with a motion for judgment on the pleadings. [3]

## III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the

ALJ applied correct legal principles, application of the substantial evidence standard to

uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social

---

[4]The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in

Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Based on the entire record, the Court recommends remand for failure to properly apply the treating physician rule.

---

substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B.     Analysis**

**1.  The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status requirements of the Act through December 31, 2007 (R. at 18); (2) Plaintiff had not engaged in substantial gainful activity since her alleged onset date, March 12, 2002 (R. at 18); (3) Plaintiff's "degenerative disc disease of the lumbar spine, status post-discectomy at L5-S1 and adjustment disorder with depressed mood" were severe impairments (R. at 19); (4) Plaintiff "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I" (R. at 21); (5) Plaintiff:

> had the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 2 hours in an 8-hour day and sit 6 hours in an 8-hour day. She [could not] climb ladders or scaffolds or crawl. She [could] occasionally balance, stoop and crouch. She [could] understand and remember simple instruction[s], perform simple tasks and some complex tasks independently and with supervision, maintain concentration, maintain a schedule, learn simple tasks and some complex tasks and work in a low stress environment defined as occasional changes in a work setting and occasional decision making

(R. at 23); (6) Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were]not entirely credible" (R. at 27); (7) Plaintiff was unable to perform any of her past relevant work (R. at 27); (8) Plaintiff was a younger individual at the time of her alleged onset date (R. at 27); (9) According to the testimony of a vocational expert ("VE"), Plaintiff could perform the positions of food checker, food and beverage order clerk, and an addresser (R. at 28). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 28).

### 2.  Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor in compliance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ failed to properly apply the treating physician rule to the opinions of Dr. Anthony Cotronea; b) the ALJ erred in evaluating Plaintiff's credibility; c) the ALJ erred in discounting the opinions from Plaintiff's sources that were rendered for a Workers' Compensation claim; d) the residual functional capacity ("RFC") was not supported by substantial evidence; e) the testimony of the VE was flawed; f) the ALJ erred in allowing evidence from Dr. Richard Goodman, a medical expert, to be admitted into the record; and g) the ALJ made a factual mistake in his decision.

### a)  The ALJ Failed to Properly Apply the Treating Physician Rule

Plaintiff contends that the ALJ erred in failing to properly apply the treating physician rule in evaluating the opinions of Dr. Anthony Cotronea, Plaintiff's treating physician. Plaintiff's Brief, pp. 10-12, 19-21. Defendant argues that the ALJ properly discounted Dr. Cotronea's opinions because they were not based on clinical findings. Defendant's Brief, pp. 7-8. Plaintiff further argues that the ALJ improperly relied on the opinions from the Social Security Administration ("SSA") consultative sources, instead of adopting the opinions from Dr. Cotronea. Plaintiff's Brief, pp. 11-12.

Dr. Cotronea, Plaintiff's treating physician, completed two separate medical reports of Plaintiff's ability to function despite her physical limitations. Dr. Cotronea completed the first report on May 24, 2005. He diagnosed Plaintiff with a herniated lumbar disc and opined that Plaintiff could occasionally lift less than ten pounds, stand and/or walk zero to two hours in an eight-hour workday, sit less than six hours in an

eight-hour workday, and was limited to pushing and/or pulling five pounds in both her

upper and lower extremities (R. at 370-72). Dr. Cotronea found that Plaintiff could

occasionally climb, balance, kneel, and crouch, but never crawl or stoop (R. at 372). He

stated that Plaintiff was occasionally limited in her ability to reach in all directions, but

had no other manipulative limitations (R. at 373). Finally, Dr. Cotronea opined that

Plaintiff must limit her exposure to temperature extremes, vibrations, and

humidity/wetness (R. at 374). The ALJ found that

> [t]he treatment notes submitted by Dr. Cotronea to support his
> assessment for a period over 2 years fit on two hand written pages. These
> notes do not contain enough clinical findings to support his assessment.
> The only clinical finding that is legible is positive straight leg raising in April
> 2005. Otherwise there are no other clinical findings mentioned. Given the
> lack of clinical support for his assessment, Dr. Cotronea's opinions are
> given little weight

(R. at 24).

Dr. Cotronea completed a substantially similar medical report on October 1, 2007

(R. at 610). Dr. Cotronea opined that Plaintiff could lift and carry five pounds

occasionally and frequently, stand and/or walk less than two hours in an eight-hour day,

and sit less than four hours in an eight-hour day. Id. Dr. Cotronea was not asked for his

opinions concerning any postural limitations. When asked for the objective medical

evidence that supported his opinions, Dr. Cotronea responded with "chronic lower back

pain, walks w[ith] cane [and] had [a] F[unctional] C[apacity] T[est] done in Feb[ruary][5] of

this year." Id. In evaluating this second opinion, the ALJ first afforded "little weight" to

the functional capacity test to which Dr. Cotronea referred (R. at 26). The ALJ then went

on to also afford Dr. Cotronea's opinion "little weight," because he relied on that

---

[5] The evaluation was completed in January 2007, not February 2007 (R. at 536, 538-41).

functional capacity test in forming his opinions. Id.

The ALJ's application of the treating physician rule, for both of Dr. Cotronea's opinions is flawed. Clinical diagnostic techniques from Dr. Cotronea, as well as from other physicians of record, support his diagnosis of a back impairment and the resulting limitations.

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

The ALJ granted both of Dr. Cotronea's opinions "little weight" because he found that they were not based on objective medical evidence (R. at 24, 26). However, the record contains ample evidence, from Dr. Cotronea and other physicians, which indicates a serious back impairment and resulting limitations. For example, various scans and studies, requested by Plaintiff's other physicians, indicate a back impairment. An MRI on March 27, 2002, showed "(1). Small central disc herniation at the L4-5 level which minimally effaces the thecal sac but otherwise does not cause any significant neural canal or neural foramen compromise. (2) Probable minimal disc bulging at the L5-S1 level with no evidence of significant neural canal or neural foramen compromise" (R. at 440). Plaintiff underwent an Electromyogram and nerve conduction study on August 26, 2003, which "[wa]s suggestive of bilateral S1 radiculopathy" (R. at 284-85). An MRI on June 8, 2004 indicated "[m]inimal disc bulge at L4-L5. Mild to moderate size broad based disc protrusion at L5-S1 which is extending to the anterior margin of the right side of the thecal sac and right S1 nerve root. There appears to be some mild posterior displacement of the right S1 nerve root" (R. at 307). A CT scan of Plaintiff's spine was completed on October 15, 2004 (R. at 319-20). The scan found that

> [c]oncordant pain was elicited at the L5-S1 level. Grade III internal disc derangements [we]re noted with a broad radial tear in the central posterior annular region. . . . A large posterior disc bulge [wa]s noted with asymmetric compression of the descending nerve roots which [wa]s greater on the right. No pain was elicited at the remaining levels. Grade III internal disc derangement [wa]s noted at the L4-5 level with a central radial tear and a right posterolateral inner annular and mid annular concentric tear. Moderate to large disc bulge [wa]s noted with diffuse mild canal stenosis due to ligamentum flavum hypertrophy combining with the

> disc bulge. Compression of the descending nerve roots may be present at
> this level with axial loading

(R. at 320). A scan of Plaintiff's lumbar spine on February 14, 2007, found "[m]ild upper

lumbar curvature convex to the left. Mild narrowing of the L5-S1 disc space is more

prominent than prior study" (R. at 532). An MRI of Plaintiff's lumbar spine, also

completed on February 14, 2007, found a "slight desiccation of the L4-L5 and L5-S1

disc annuli, which have central annular tears at both levels" (R. at 533). These scans

and tests of Plaintiff's spine indicate a back impairment and therefore support Dr.

Cotronea's opinions.

Tests performed during the SSA consultative examinations also support Dr.

Cotronea's opinions. Plaintiff underwent an orthopedic examination on November 19,

2003, with Dr. Myra Shayevitz (R. at 297-300). Dr. Shayevitz found

> Forward flexion of the spine [was] 20 degrees. [Plaintiff] states she [could
> not] extend backwards as this would produce pain radiating down the right
> leg; so this [was] deferred. Lateral flexion is 5 degrees on the right and 10
> degrees on the left. There is lumbar tenderness. . . . There is right SI
> notch tenderness. . . . In opposition, straight leg raising on the right at 30
> degrees produced pain in the back radiating down the leg to below the
> knee [and] on the left, produced a feeling of pain in the knee going into the
> hip

(R. at 299). Dr. Shayevitz also found that Plaintiff's reflexes were absent in her lower

extremities. Id. Dr. Shayevitz diagnosed Plaintiff with "[l]ow back pain with bilateral

radiculopathy" and opined that Plaintiff had a guarded prognosis. Id. Ultimately, Dr.

Shayevitz opined that Plaintiff "certainly ha[d] significant limitations in any prolonged

sitting, standing, walking, and stair climbing. She [wa]s fairly limited in any lifting and

carrying. She c[ould] handle a light small object. Her hearing and speech [we]re intact"

(R. at 299-300).

10

Plaintiff attended a subsequent SSA consultative examination with Dr. Kalyani Ganesh, on October 11, 2005 (R. at 480-82). Although Dr. Ganesh found fewer clinical indicators supporting Plaintiff's impairments, she diagnosed Plaintiff with a herniated disc and opined that Plaintiff had a guarded prognosis (R. at 482). Dr. Ganesh opined that Plaintiff "ha[d] a moderate degree of limitation to sitting, standing, walking, lifting, carrying, pushing, and pulling. Claimant's use of the cane [wa]s necessary as needed for pain." Id.

Plaintiff underwent an examination with Dr. David Inslicht, to evaluate the relationship between her current impairments and her Workers' Compensation claim (R. at 509-13). In his examination of Plaintiff's cervical spine, Dr. Inslicht found a "limited range of motion on forward flexion (40 degrees); extension (30 degrees); bilateral lateral flexion (30 degrees); and rotation bilaterally (60 degrees)" (R. at 511). For Plaintiff's thoracolumbar spine, Dr. Inslicht found a "limited range of motion on forward flexion (30 degrees) bilateral lateral flexion (20 [degrees]). Extension was not attempted at the claimant's request. Straight leg raise test in the supine position was to 30 degrees bilaterally, with lower back pain." Id. Dr. Inslicht diagnosed Plaintiff with a "[l]umbar disc displacement/chronic lumbar myofascial pain syndrome" (R. at 512). Dr. Inslicht's findings support Dr. Cotronea's opinion of a back impairment.

As noted by the ALJ, much of Dr. Cotronea's treatment notes are illegible (R. at 24) (finding that the only legible clinical finding was a positive straight leg raising test). However, Dr. Cotronea's notes offer more objective evidence to support his opinions than a single straight leg raising test in April 2005. Several treatment notes, which

appear to be completed by Dr. Cotronea's nurse practitioner,[7] are legible, albeit
completed subsequent to Dr. Cotronea's May 2005 opinion. Objective medical evidence
found in these notes support the diagnosis of a back impairment and resulting
limitations. For example, on June 28, 2006, a "diminished knee/ankle jerk" was found in
Plaintiff's right lower extremity (R. at 549). Increased "tenderness across [lumbar] spine
[and] into bilateral S[acroiliac] joint" was also found on that day. Id. "[T]enderness [to]
palpitation across lumbar area [and] into bilateral S[acroiliac] joint" was again found on
October 10, 2006. Also found was a decreased knee and ankle jerk in Plaintiff's right
lower extremity. Id. On January 11, 2007, "mild tenderness [with] palp[itation] [in the]
lumbar area" was found, and muscle testing was a four out of five in both Plaintiff's
lower extremities (R. at 543). Decreased "sensation [in] both lower extremeties," as well
as intoeing in Plaintiff's left foot were also found. Id. These tests, completed by Dr.
Cotronea's nurse practitioner, indicate a back impairment and therefore support his
opinions.

The ALJ also discounted Dr. Cotronea's second opinion because it was based, in
part, on a functional capacity test performed earlier that year. The ALJ granted the test
"little weight" because of "the inconsistencies in [Plaintiff's] effort" (R. at 26). During the
evaluation, the testers[8] noted that Plaintiff "showed some inconsistency of effort . . . .
Therefore, the findings of the client's actual abilities may be greater than those

_____

[7] While the signatures on the treatment notes are illegible, they end with "NP," a nurse practitioner. These
treatment notes are in a portion of the record submitted by Dr. Cotronea. Thus, the Court concludes that
these treatment notes, were reviewed by Dr. Cotronea.
[8] The evaluation was completed by Ms. Kimberly Jennings, and Ms. Meg Liberty (R. at 541). Both are
occupational therapists. Id. The test showed that Plaintiff could continuously sit for 30 minutes;
continuously stand for 5 minutes with a cane; continuously walk for 5 minutes with a cane; stair climb one
flight occasionally; forward reach occasionally with external support; and push 11 pounds (R. at 563).
Plaintiff was unable to squat, stoop, stair climb, or floor to waist lift. Id. Plaintiff's ability to reach overhead,
lift waist to shoulder, carry, and pull were not tested. Id.

demonstrated today" (R. at 540).  The examiners noted that "some inconsistent movement patterns were seen. For example during ambulation and stair ascension the client demonstrated weakness at the right dorsiflexors and dragging her right foot. When descending on stairs, however, the client demonstrated dorsiflexion to neutral to allow whole foot contact with stairs." Id. However, the testers also found that "[d]uring the push test, the client produced low coefficients of variation, indicating consistency and good effort." Id. Ultimately, in a letter sent to nurse practitioner, Kristin Dempsey,[9] summarizing the test and its results, the examiners found that Plaintiff "exerted a good effort throughout this evaluation and her movement patterns were consistent with her diagnoses most of the time. This suggests that today's findings reflect this client's actual capabilities" (R. at 536, 538). The examiners' statement indicates that considering Plaintiff's effort throughout the whole test, they concluded that Plaintiff "exerted a good effort . . . [and] that today's findings reflect this client's actual capabilities" (R. at 538). Dr. Cotronea appropriately relied on these findings when forming his opinions because they were clinical diagnostic techniques. See 20 C.F.R. § 404.1527(d)(2) (a treating physician's opinion must be based on "medically acceptable clinical and laboratory diagnostic techniques" to be granted controlling weight). Therefore, the ALJ inappropriately rejected Dr. Cotronea's opinions for relying on these findings.

Moreover, "the lack of specific clinical findings in the treating physician's report [does] not, standing by itself, justify the ALJ's failure to credit the physician's opinion." Clark v, Comm'r of Soc. Sec., 143 F.3d at 118 (citing Schaal, 134 F.3d 496)). The ALJ has an "affirmative duty to develop the record and seek additional information from the

---

[9] Ms. Dempsey worked with Dr. Nameer Haider, Plaintiff's pain management specialist (R. at 524).

treating physician, *sua sponte,* even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions.  Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y. 2005) (citing Clark, 143, F.3d at 118; Schaal v. Apfel, 134 F.3d at 505); See also 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source . . . does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").  Failure to re-contact is error.  See Taylor v. Astrue, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence"). Thus, because the ALJ found that Dr. Cotronea's opinions were not based on clinical and diagnostic techniques, he had an obligation to re-contact Dr. Cotronea to assess on what those opinions were based.

The Court notes that Appeals Council previously remanded the case to the ALJ with instructions to re-contact Plaintiff's treating physicians for clarification of their opinions (R. at 46). It is error for an ALJ to not follow the Appeals Council's orders. See Scott v. Barnhart, No. 07-CV-6561, 2009 WL 54502, at *10 (W.D.N.Y. 2009) ("[An] ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand."). Here, Dr. Cotronea's second opinion was submitted subsequent to the Appeals Council remand order. It is unclear from the record how this second opinion was obtained.  Even assuming, arguendo, this second opinion satisfied the Appeals Council remand directions to the ALJ, the ALJ failed to articulate how he resolved the deficiency in the record from the first hearing.  Moreover, Dr. Cotronea's

second opinion does not address the diagnostic and clinical techniques—suggesting

that if he was re-contacted, he was not re-contacted for the purpose explaining his use

of supporting diagnostic and clinical techniques, in clear violation of the Commissioner's

order.  Thus, the court will not remand for further consideration because the ALJ is once

again alleging a lack of clinical and diagnostic techniques in the face of clear evidence

that clinical and diagnostic techniques clearly exist supporting the Plaintiff's claim that

she is disabled.

Therefore, the Court will recommend remand for a calculation of benefits.

Because the Court finds that the ALJ erred in applying the treating physician rule, it

need not reach the question of whether the ALJ erred in relying more heavily on the

opinions from the SSA consultative sources.

### b)  The ALJ's Credibility Analysis is Necessarily Flawed

Plaintiff argues that the ALJ erred in evaluating her credibility. Plaintiff's Brief, pp.

16-17, 21-24. Plaintiff further argues that the ALJ "failed to give a full and complete

rendition of the plaintiff's testimony with regard to her limitations and her sporadic ability

to perform routine daily activities." Plaintiff's Brief, p. 13.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it

is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982

F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to

accept without question the credibility of such subjective evidence.'" Martone v. Apfel,

70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27

(2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the

claimant has medically determinable impairments, "which could reasonably be expected

15

to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[10] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

The ALJ completed the two-step process by "find[ing] that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. at 27). Throughout his decision, the ALJ also discussed several of the factors. For example, the ALJ considered Plaintiff's daily activities, the type and effect of medications;

---

[10] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

Plaintiff's statement that she was not experiencing any side effects of her medications; as well as injections Plaintiff underwent to relieve her pain (R. at 19-27). Thus, as the record currently stands, the ALJ's credibility analysis is technically supported by substantial evidence. However, the Court has previously recommended remand for failure to properly apply the treating physician rule. The ALJ's proper evaluation of Dr. Cotronea's opinions will necessarily impact the ALJ's credibility analysis. Thus, the credibility evaluation is necessarily flawed.

As for Plaintiff's second argument, she offers no legal authority to support her contention that the ALJ erred in failing to fully recite her testimony. Indeed, "[w]hen, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). Thus, the Court can find no error in the ALJ's failure to recite Plaintiff's entire testimony.

### c) The ALJ Did Not Discount the Opinions from Plaintiff's Sources Simply Because they Were Formed for a Workers' Compensation Claim

While unclear, Plaintiff appears to argue that the ALJ erred in discounting the opinions of several of Plaintiff's sources because they were rendered for a Workers' Compensation claim. Plaintiff's Brief, pp. 17-18. Specifically, Plaintiff refers to the ALJ's analysis of the opinions from i) Plaintiff's pain management specialists, Drs. Cenk Pekis, Nameer Haider, and Bhavini Chandarana, and ii) her chiropractor, Benjamin Salloum, D.C. Id.

### i) The ALJ Properly Discounted the Disability Finding from Plaintiff's Pain Management Specialists

Plaintiff argues that the ALJ erred in discounting the disability finding from Plaintiff's pain management specialists solely because they rendered their opinions for a Workers' Compensation claim. Plaintiff's Brief, pp. 17-18.

The ALJ found that Plaintiff's "pain management specialists Cenk Pekis, M.D., Nameer Haider, M.D., and Bhavini Chandarana, M.D., opined that the claimant was totally disabled for Workers' Compensation purposes. It should be noted that 'total disability' under Workers' Compensation law is different than 'total disability' under Social Security Law. Therefore, these opinions are given little weight" (R. at 23).

 "A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules . . . . We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us." 20 C.F.R. § 404.1504. Thus, contrary to Plaintiff's argument, the ALJ was correct granting the disability findings "little weight," because they were formed in a Workers' Compensation context. See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y. 1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.").

Moreover, an opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner. 20 C.F.R. § 404.1527(e)(1). Therefore, the disability

findings from Plaintiff's pain management specialists were properly discounted.

### ii)  Dr. Salloum's Opinions Were Properly Discounted

While somewhat unclear, Plaintiff appears to contend that the ALJ improperly

discounted the opinions from her chiropractor, Dr. Salloum, because they were made

for a Workers' Compensation claim. Plaintiff's Brief, pp. 17-18.

The ALJ noted Dr. Salloum's

opin[ion] that the claimant remained permanently totally disabled with
regards to returning to her original employment. He vaguely mentioned
restrictions in lifting, bending, standing and sitting but did not quantify
them. He then stated that she continued to be permanently partially
disabled which contradicts the initial statement of 'total disability.' Given
these inconsistencies and the fact that he is a chiropractor which is not an
acceptable medical source under the regulations, his opinion is given little
to no weight

(R. at 23).

A chiropractor is not an "acceptable medical source," but rather an "other

source." 20 C.F.R. §§416.913(a), (d).  The opinions of "other sources" are never entitled

to controlling weight. See Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995) (finding

that, as non-acceptable medical sources, chiropractors' opinions are never entitled to

controlling weight); Crysler v. Astrue, 563 F. Supp. 2d. 418, 432-35 (N.D.N.Y. 2008)

(same for nurse practitioners' opinions). Instead, the opinions of "other sources" may be

used to "show the severity of [a claimant's] impairment(s) and how it affects [a

claimant's] ability to work." Id. §416.927(d); see also Crysler v. Astrue, 563 F. Supp. 2d.

418, 435 (N.D.N.Y. 2008); McConnell v. Astrue, No. 6:03-CV-521, 2008 WL 833968, at

*16 (N.D.N.Y. Mar. 27, 2008).  Thus, an "other source's" opinion is not treated with the

same deference as a treating physician's opinion, but is still entitled to some weight,

especially when there is a treatment relationship with the Plaintiff.  Pogozelski v.

Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding

that "some weight should still have been accorded to [the therapist's] opinion based on

his familiarity and treating relationship with the claimant"); see, e.g., Mejia v. Barnhart,

261 F.Supp.2d 142, 148 (E.D.N.Y. 2003 (finding that the ALJ should have afforded a

treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a

regular basis and [] offered a diagnosis consistent with that of the treating psychiatrist");

White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y. 2004)(reversing where the ALJ

failed to give appropriate weight to the plaintiff's social worker, who had a regular

treatment relationship with the plaintiff and whose diagnosis was consistent with the

treating psychiatrist); Rivera v. Bowen, 665 F. Supp. 201, 206 (S.D.N.Y. 1987)(finding

that the opinions of chiropractors and physical therapists must be accorded at least

some weight).  The Second Circuit has said that "the ALJ has discretion to determine

the appropriate weight to accord the [other source's] opinion based on all the evidence

before him."[11] Diaz, 59 F.3d at 314.

　　　　It is clear from the ALJ's decision that he did not discount Dr. Salloum's opinions

because they were rendered in connection with a Workers' Compensation claim or

because he was a chiropractor.  Rather, the ALJ appropriately analyzed the opinions

with the purpose of assigning weight and afforded "little to no weight" to Dr.  Salloum's

---

[11] In his analysis of the weight to afford other sources, the ALJ may apply the factors in 20 C.F.R.
§416.927(d)(1)-(6), which are "basic principles that apply to the consideration of all opinions from medical
sources who are not 'acceptable medical sources.'" Social Security Ruling 06-03P, 2006 WL 2329939, at
*4 (S.S.A.). Those factors are: (1) length of the treatment relationship and the frequency of examination,
(2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5)
specialization of the treating physician, and (6) other factors that are brought to the attention of the court.
20 C.F.R. §416.927(d)(1)-(6); see also Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Clark v.
Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

opinions because he found them to be inconsistent (R. at 23). Consistency is an appropriate factor to consider when evaluating opinion evidence. 20 C.F.R. § 404.1527(d)(4).

### e) The RFC is Necessarily Flawed

Plaintiff argues that the RFC is not supported by substantial evidence because i) the ALJ erred in evaluating the independent functional evaluation; ii) no source supplied an opinion identical to that of the RFC the ALJ determined; and iii) the ALJ erred in relying upon the opinions from the medical experts: Drs. Aaron Satloff and Richard Goodman. Plaintiff's Brief, pp. 13-14, 16, 17.

The Court has previously found errors in the ALJ's application of the treating physician rule. Thus, the RFC is necessarily flawed. Therefore, the Court need not determine whether the RFC, as it currently stands, is supported by substantial evidence.

### f) The Court Need Not Reach Whether the ALJ Erred at Step Five

Plaintiff argues that the ALJ erred in "fail[ing] to disclose the entire content of the vocational expert's testimony." Plaintiff's Brief, pp. 12. Plaintiff further argues that the VE's testimony was flawed and not in compliance with the order from the Appeals Council.

The Court has previously found errors in the ALJ's application of the treating physician rule. Therefore, the Court need not determine whether the ALJ erred at step five of the sequential analysis.

### f) The ALJ Did Not Err In Allowing Evidence from Dr. Goodman into the Record

Plaintiff argues that the ALJ erred in allowing evidence from medical expert, Dr.

Richard Goodman, to be entered into the record. Plaintiff's Brief, p. 17.

On June 7, 2007, the ALJ sent a letter to Dr. Goodman requesting his professional opinion of Plaintiff's limitations (R. at 243). Dr. Goodman responded with his opinions that same day (R. at 582-91). Plaintiff sent a letter to the ALJ on July 26, 2007, objecting to the admittance of Dr. Goodman's opinions into the record.

Plaintiff's argument is meritless. The Regulations allow for an ALJ to "ask for and consider opinions from medical experts on the nature and severity of your impairment(s)." 20 C.F.R. § 404.1527(f)(2)(iii). Notably, despite allowing the evidence to be entered into the record, the ALJ granted the opinion "little weight since it [was] not consistent with other evidence in the record and [did] not specify support for the opinion" (R. at 25). Thus, the Court can find no error in the ALJ's request, and acceptance, of evidence from Dr. Goodman.

### g)  The ALJ's Factual Mistake Did Not Impact His Decision

Plaintiff argues that "[t]he ALJ stated that Exhibit 25F contains a specific functional capacity assessment, yet no such specific functional capacity assessment can be found in said Exhibit." Plaintiff's Brief, p. 14.

The ALJ noted that "[i]n November 2005, a state agency review physician opined that the claimant could lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk at least 2 hours in an 8-hour day and sit about 6 hours in an 8-hour day (Exhibit 25F)" (R. at 25). Plaintiff is correct in arguing that the ALJ erroneously cited to Exhibit 25F when in fact the ALJ was referring to Exhibit 27F. However, Plaintiff fails to articulate how this purely clerical error impacted the ALJ's decision. The Court can also find no prejudicial effect whatsoever. Notably, the ALJ correctly cited to the

date of the opinion. Therefore, this clerical mistake is not a basis for remand.

3.      Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm,

reverse, or modify a decision of the Commissioner 'with or without remanding the case for a

rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)

(fourth sentence)).  Remand is "appropriate where, due to inconsistencies in the medical

evidence and/or significant gaps in the record, further findings would . . . plainly help to assure

the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8

(E.D.N.Y. Jan. 29, 2008).

On the other hand, the Appeals Council has previously remanded to the ALJ, and

Plaintiff initially applied for DIB over six and one half years ago.  Further delay in the

resolution of Plaintiff's claim is unwarranted under the circumstances of this case. Under

the Act, a court "shall have power to enter ... a judgment affirming, modifying, or

reversing the decision of the Commissioner ... with or without remanding the cause for a

rehearing." 42 U.S.C. § 405(g) (fourth sentence). "Where there are gaps in the

administrative record or the ALJ has applied an improper legal standard," the Second

Circuit has indicated that remand "for further development of the evidence" is proper.

Rosa v. Callahan , 168 F.3d 72, 82-83 (2d Cir.1999) (internal citations omitted).

"In other situations, where [the] Court has had no apparent basis to conclude that

a more complete record might support the Commissioner's decision, [the Court has]

opted simply to remand for a calculation of benefits." Id. at 83. A remand for calculation

of benefits is warranted "when the record provides persuasive proof of disability and a

remand for further evidentiary proceedings would serve no purpose." Parker v. Harris ,

626 F.2d 225, 235 (2d Cir.1980); see also     Butts v. Barnhart , 388 F.3d 377, 385-86

(2d Cir.2004).

For the foregoing reasons, this Court concludes that remand to the

Commissioner for further proceedings would serve no productive purpose, would not

produce findings contrary to this Court's conclusions, and would only cause further

delay. Accordingly, it is recommended that a remand be ordered solely for the

calculation of benefits.

## IV.   Conclusion

After carefully examining the administrative record, the Court finds that the ALJ

has repeatedly erred in applying the treating physician rule to the opinions of Dr.

Cotronea and that further development of the record would not change the result. It is

therefore recommended that the Commissioner's decision denying disability benefits be

REMANDED for a calculation of benefits in accordance with this recommendation and

pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:      April 26, 2010

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


                Syracuse, New York
DATED:          April 26, 2010

25